UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CHRISTIAN W.[1],

                     Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                     Defendant.

Case No.: 3:19-cv-00779-MK

OPINION AND ORDER

**KASUBHAI, Magistrate Judge:**

      Plaintiff Christian W. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") decision denying his application for Title XVI Supplemental Security Income ("SSI") under 42 U.S.C. §§ 1381a and 1382c(a)(3)(A).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). Both parties consent to jurisdiction by a U.S. Magistrate Judge.  For the reasons set forth below, the Commissioner's decision should be reversed and remanded for immediate calculation and award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental parties in this case.

## BACKGROUND

Plaintiff protectively filed an application for Supplemental Security Income on May 7, 2010, alleging disability beginning June 2, 1999. Tr. 18, 34, 158-64.  His claim was initially denied on August 31, 2010, and upon reconsideration on October 11, 2010. Tr. 76-88, 90-101. Plaintiff timely requested and appeared for a hearing before Administrative Law Judge ("ALJ") Catherine R. Lazuran on February 22, 2012. Tr. 31-75, 115-17.  ALJ Lazuran denied Plaintiff's application in a written decision dated April 17, 2012. Tr. 15-30.  After the hearing, Plaintiff amended his alleged onset date to March 28, 2008 and requested reopening of a prior application filed December 7, 2009, which was previously denied on March 25, 2010. Tr. 18, 157.  On July 2, 2013, the Appeals Council denied a request for review, and Plaintiff filed an appeal with this court. Tr. 1-5.

On December 1, 2014, United States District Judge Michael H. Simon reversed the Commissioner's decision and remanded the case for further proceedings to allow the ALJ to properly consider the medical opinions of Dr. Karla Causeya and Ms. Katie Smith. Tr. 694-720. On December 3, 2015, a new ALJ hearing was held before ALJ Paul G. Robeck. Tr. 596-638. ALJ Robeck issued a decision on January 6, 2016 finding Plaintiff was not disabled. Tr. 573-95. The Appeals Council denied Plaintiff's request for review, and Plaintiff filed a second appeal with this court. Tr. 563-68.

On December 11, 2017, United States Magistrate Judge Youlee Yim You issued a Findings and Recommendation recommending that the Commissioner's decision be reversed and the case be remanded for further proceedings for the ALJ to properly consider the opinions of Dr. Karla Causeya and the DDS examining physicians. Tr. 1263-82.  On February 1, 2018, United States District Judge Michael H. Simon adopted Judge You's Findings and

Recommendation and remanded the case for further administrative proceedings. Tr. 1261-62, 1288.  On March 9, 2018, Judge Simon signed an Order clarifying the court's decision, explaining that the case should be remanded for further proceedings, and not for an award of benefits. Tr. 1289-92.

On November 5, 2018, a new ALJ hearing was held before ALJ S. Pines. Tr. 1188-1225. On March 11, 2019, ALJ Pines issued a decision finding Plaintiff was not disabled. Tr. 1161-87. Plaintiff now seeks judicial review of that decision.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).  To determine whether substantial evidence exists, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## THE SEQUENTIAL ANALYSIS

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920.  The initial burden of proof rests upon the claimant to meet the first four steps. *Id.*  If the claimant satisfies her burden with respect to the first four steps, the burden shifts to the commissioner at step five. *Id.*; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4).  At step two, the Commissioner determines whether the claimant has one or more severe impairments that are expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii).  At step three, the Commissioner determines whether any of those impairments "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. § 416.920(a)(4)(ii).  The Commissioner then assesses the claimant's residual functional capacity ("RFC"). *Id.*  At step four, the Commissioner determines whether claimant's RFC allows for any past relevant work. *Id.*  At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v).  If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.*  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

## DISCUSSION

In the present case, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application date of May 7, 2010. Tr. 1165.  At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar I disorder, personality disorder, posttraumatic stress disorder (PTSD), a cognitive disorder, schizophrenia, a traumatic brain injury, and substance abuse. Tr. 1165-67.

At step three, the ALJ found that none of those severe impairments met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 1167-68.

Prior to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and determined he could

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple routine tasks and occasional workplace changes. The claimant can have occasional interaction with supervisors and occasional superficial interaction with coworkers with no teamwork. The claimant can have no contact with the general public.

Tr. 1168-76.

At step four, the ALJ found that the record "did not contain sufficient evidence about the claimant's past relevant work to make a finding at step four." Tr. 1176. At step five, the ALJ found that Plaintiff retained the ability to perform the requirements of jobs existing in significant numbers in the national economy, such as Janitor, Recycler/Reclaimer, and Hand Packager. Tr. 1177-78. The ALJ then found that Plaintiff had not been under a disability, as defined by the Act, since May 7, 2010, the date the application was filed. Tr. 1178.

Plaintiff seeks review by this Court contending that the ALJ erred in (1) improperly rejecting examining psychologist Karla Causeya's opinion, (2) improperly rejecting treating mental health provider Dr. Susan Marie's opinion, and (3) failing to properly follow the remand order regarding the inclusion of restrictions identified by the DDS examining psychologists. Pl.'s Opening Br. 7 (ECF No. 17).

Plaintiff requests this case be reversed and he be found disabled. Pl.'s Opening Br. 18 (ECF No. 17). Alternatively, Plaintiff requests the case be remanded for the Commissioner to reconsider evidence that was improperly discounted. *Id.* The Court addresses Plaintiff's arguments below.

///

///

**I. Medical Opinion Evidence**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th

Cir. 2008). Specific and legitimate reasons for rejecting a physician's opinion may include its

reliance on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v.*

*Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040

(9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995). An ALJ errs by

rejecting or assigning minimal weight to a medical opinion "while doing nothing more than

ignoring it, asserting without explanation that another medical opinion is more persuasive, or

criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's

conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014); *see also Smolen v. Chater*,

80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or

she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d

715, 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set

forth his own interpretations and explain why they, rather than the doctors', are correct."

*Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

"[T]he opinion of a nonexamining medical advisor cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of an examining or treating physician."

*Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### A.     Dr. Karla Causeya

Dr. Karla Causeya performed a psychological examination of Plaintiff on January 27, 2012. Tr. 530-41.  Dr. Causeya noted that Plaintiff reported having mood swings starting from age 14 and that he would "be up and happy one to two weeks and then he would be down, feeling depressed, suicidal and worthless, for one to five days." Tr. 532.  She also noted his substance use started at age 11 with drinking alcohol and occasionally smoking marijuana. *Id.* She wrote that he reported being sober for six and a half years in his thirties, and that his current alcohol consumption was "three beers once every two weeks, since November 2011." *Id.*

Dr. Causeya diagnosed Plaintiff with Bipolar I, noting that his symptoms include being "up" for one to two weeks followed by being down or depressed for one to five days at a time. Tr. 533.  She wrote that during his depressed moods Plaintiff "has no energy, tends to stay in bed, has no appetite, does not engage in regular self-care, and has feelings of worthlessness." *Id.* She also noted that Plaintiff's case manager, Katie Smith, MSW, QMHP, reported that at his housing at Bud Clark Commons he "becomes very isolative," stays in his room during depressed episodes, and "has also engaged in disruptive verbal confrontation with other residents while in a depressed period." *Id.*

During her examination, Dr. Causeya had Plaintiff complete a series of tests where she noted "no evidence of hallucinations or delusions," a blunted affect, and that he appeared depressed. *Id.*  She also wrote that he reported "ongoing suicidal ideation." *Id.*  She noted that

Plaintiff had a 12.9 grade reading level and obtained a combined average score on the Color Trials tests. Tr. 535.

Overall, Dr. Causeya found Plaintiff would have moderately severe functional limitations in activities of daily living, sustained concentration and persistence, maintaining social functioning, and in decompensation in work-like settings. Tr. 536.  She also found he would have moderate difficulties with adaptation and mild to moderate limitations in understanding and memory. *Id.*  In making these findings Dr. Causeya noted that Plaintiff could perform activities of daily living and simple repetitive instructions when he was in is his "good" or "up" moods but would struggle with activities when he was in a depressed mood. *Id.*  Based on her evaluation, Dr. Causeya wrote, "[g]iven the continuing instability of his moods, as well as his lifelong history of impulsive behavior and sudden job changes, it is not possible for [Plaintiff] to maintain gainful employment." Tr. 538.

On February 8, 2012, Dr. Causeya completed a Mental Residual Functional Capacity Assessment for Plaintiff. Tr. 539-41.  In this assessment Dr. Causeya wrote that Plaintiff would have moderate difficulty with the following: understanding and remembering detailed instructions, working in coordination or proximity to others without being distracted, interacting appropriately with the general public or customers, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in the work setting, and setting realistic goals and making plans independently. *Id.*  Dr. Causeya also wrote that Plaintiff would have moderately severe limitations in the following areas: maintaining concentration for at least two straight hours, sustaining an ordinary routine without special supervision, completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a constant pace without an unreasonable number

and length of rests, getting along with coworkers and peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness. Tr. 540.

The ALJ gave Dr. Causeya's medical opinion "little weight" and provided the following reasons for rejecting it: (1) greater weight was given to the medical opinion of Dr. Strahl[2] who the ALJ found "has greater education, training and experience" than Dr. Causeya and "has reviewed the most complete and up-to-date medical evidence of record"; (2) Dr. Causeya only conducted a one-time examination of Plaintiff; (3) Dr. Causeya relied on the opinion of Katie Smith, MSW, QMHP, who the ALJ noted only saw Plaintiff for five months which he found "was likely not yet long enough to assess longitudinal patterns,"; (4) Dr. Causeya's opinion was inconsistent with Plaintiff's "self-assessment that he is doing well"; (5) there are suggestions that Plaintiff overstated his symptoms; and (6) the ALJ found Dr. Causeya's assessment "does not comport with treatment notes showing improved symptoms when the claimant was medication compliant, and problems (including interactivity difficulties) during periods of noncompliance." Tr. 1174.  Plaintiff argues that the reasons provided by the ALJ are either not supported by substantial evidence in the record or were previously rejected by this Court.  The Court agrees.

First, the Court addresses Plaintiff's argument that the ALJ's third, fourth, fifth, and sixth reasons for discrediting Dr. Causeya's medical opinion were all previously considered by this Court and dismissed in previous appeals. Pl.'s Opening Br. 10 (ECF No. 17). This Court agrees.

The ALJ discredited Dr. Causeya's medical opinion because it "relies in part of the assessment of Katie Smith, MSW, QMHP" who the ALJ wrote had a "five-month treating

---

[2] Dr. Strahl is incorrectly noted as "Dr. Straw" in the ALJ hearing transcript from November 15, 2018. *See* Tr. 1188-1225.  The incorrect spelling of Dr. Strahl's name in the hearing transcript does not change any of the Court's subsequent analysis.

relationship with the [Plaintiff]" which was "likely not yet long enough to assess longitudinal patterns." Tr. 1174. However, in December 2014 this Court wrote that it was "appropriate for Dr. Causeya to interview Plaintiff's case manager, Ms. Smith," noting that Ms. Smith "had an ongoing treatment relationship with Plaintiff" and "had knowledge of Plaintiff's conduct during his depressive episodes." Tr. 714-15. Overall, this Court found Dr. Causeya's reliance on Ms. Smith's observations was not a specific and legitimate reason to discredit Dr. Causeya's medical opinion, and thus it is not a specific and legitimate reason to discredit Dr. Causeya's medical opinion now.

Next, the ALJ discredited Dr. Causeya's medical opinion finding that it was inconsistent with Plaintiff's reports that when he is "doing well" he is "very considerate and makes furniture for other residents." Tr. 1174. Plaintiff argues that "it is not clear how making furniture for other residents is counter to any of Dr. Causeya's opinions," citing this Court's previous finding in December 2017 that "[t]he observation by the ALJ that [Plaintiff] does some woodworking in his apartment adds little to the analysis." Pl.'s Opening Br. 11 (ECF No. 17.), citing tr. 1275. Indeed, as previously stated by this Court, "it is unclear how [Plaintiff]'s industriousness undercuts Dr. Causeya's assessment." Tr. 1276. Additionally, this Court previously recognized that Plaintiff's bipolar disorder is "episodic in nature" so Plaintiff's ability to complete some woodworking is not inconsistent with Dr. Causeya's medical opinion that Plaintiff has "good" and "bad" days. *See* Tr. 714. Therefore, Plaintiff's ability to complete some woodworking continues to not be a specific and legitimate reason to discredit Dr. Causeya's medical opinion.

Next, The ALJ discredited Dr. Causeya's medical opinion because it "does not comport with suggestions that the claimant overstated his symptoms." Tr. 1174. In making this finding the ALJ cites an August 18, 2010 consultative examination Plaintiff had with clinical

psychologist, Dr. Gary Sacks, noting that "[Plaintiff] complained of memory difficulties that Dr. Sacks found were in excess of what he observed." *Id.*, citing tr. 461. The ALJ's finding implies that the ALJ rejected Dr. Causeya's medical opinion because she relied solely on Plaintiff's overstated symptoms when assessing his overall functionality. However, this Court has already addressed the issue of whether Dr. Causeya's medical opinion was properly supported by evidence other than Plaintiff's statements. In December 2017, this Court found Dr. Causeya "did not solely rely upon [Plaintiff]'s statements in arriving at her conclusions," but instead "subjected [Plaintiff] to a battery of psychological tests, reviewed at least a portion of his medical history, and discussed [Plaintiff]'s symptoms with MSW Smith over the phone." Tr. 1275. As this Court has previously noted, Dr. Causeya's medical opinion was reasonably based on independent testing and not solely on Plaintiff's statements. Therefore, the ALJ's decision to discredit Dr. Causeya's medical opinion because it "does not comport with suggestions that the claimant overstated his symptoms" is not supported by the record.

The next reason the ALJ discredited Dr. Causeya's medical opinion was because it "does not comport with treatment notes showing improved symptoms when the claimant was medically compliant, and problems (including interactivity difficulties) during periods of noncompliance." Tr. 1174. Specifically, the ALJ cited an instance where Plaintiff "resorted to violence" towards another Bud Clark Commons resident when he "was off medication and using alcohol," despite "noted improvements [of symptoms] with medication." Tr. 1174, citing tr. 973, 1021, 1023. In December 2017, this Court addressed and rejected a similar argument finding that the ALJ erred by "fault[ing] Dr. Causeya for omitting discussion of [Plaintiff]'s functionality 'when he was sober and otherwise compliant with his medications after the claimant obtained stable housing in 2011.'" Tr. 1276, citing tr. 584. Specifically, this Court found that Dr. Causeya "explicitly

commented that, despite sobriety and stable housing, [Plaintiff] continued to have severe, if cyclic, symptoms." Tr. 1277.  Indeed, an independent review of the record shows Plaintiff continues to struggle with his mental health impairments even while on medications. *See* Tr. 512, 1014.

Here, the ALJ attempts to discredit Dr. Causeya for similar reasons, claiming that her treatment notes are inconsistent with Plaintiff's improved symptoms while medically compliant. *See* Tr. 1174. However, this Court maintains that the ALJ previously erred by discrediting Dr. Causeya's medical opinion for failing to account for Plaintiff's improved symptoms, and therefore the ALJ here errs by relying on the same reason here.

Next, the Court turns its attention to the two remaining reasons the ALJ discredited Dr. Causeya's medical opinion which have not been previously addressed by this Court.  First, the ALJ gave greater weight to the opinion of medical expert Dr. Strahl finding he "has greater education, training and experience" than Dr. Causeya and "has reviewed the most complete and up-to-date medical evidence of record." Tr. 1174.  Plaintiff argues that the ALJ's "claim lacks substantiation," noting that there is no resume in the record for Dr. Strahl upon which the ALJ could base his opinion. *See* Pl.'s Opening Br. 9 (ECF No. 17).  Indeed, neither Dr. Strahl, nor Dr. Causeya's resumes are included in the record so it is unclear how the ALJ could determine that Dr. Strahl has greater education, training, or experience than Dr. Causeya.  Therefore, this reason for discrediting Dr. Causeya's medical opinion is not supported by the record.

Next, Plaintiff argues that Dr. Strahl did not review all the records available, and even if he had, "there is no indication that newer records shed any additional light on Plaintiff's condition that would render Dr. Strahl's opinion more valuable than Dr. Causeya's." Pl.'s Opening Br. 9 (ECF No. 17).  The Court finds Plaintiff's arguments persuasive.  Indeed, Dr.

Strahl testified that he did not review all the records, noting that he was only able to review

through Exhibit 33-F. *See* Tr. 1194.  Additionally, although Dr. Strahl reviewed more recent

medical records as the ALJ correctly noted, Dr. Strahl still found Plaintiff's "current situation is

very consistent" with Dr. Causeya's 2012 medical report. *See* Tr. 1201.[3]  Given the consistency

of Plaintiff's symptoms over the years, it is unclear why Dr. Strahl's ability to access more recent

medical records provides a specific and legitimate reason to discredit Dr. Causeya's medical

opinion.  In fact, the consistency in medical reports supports a finding that Dr. Causeya's

medical opinion should be given more weight. *See* 20 C.F.R. § 416.927(c)(4) (the more

consistent the opinion is with the evidence as a whole, the greater weight the opinion should be

accorded.)  Therefore, the ALJ's findings that Dr. Strahl had greater education, experience, and

training, and was able to review more recent medical records were not specific and legitimate

reasons to discredit Dr. Causeya's medical opinion.

Finally, the ALJ discredited Dr. Causeya's medical opinion because she only conducted

"a one-time consultative examination of [Plaintiff]. Tr. 1174.  Plaintiff argues that this was not a

specific and legitimate reason to discount Dr. Causeya's medical opinion in favor of Dr. Strahl's

opinion, noting that Dr. Causeya's role as an examining psychologist allowed her to "interview

Plaintiff, perform mental status testing, speak with care providers, and review records," while Dr.

Strahl, as the reviewing psychiatrist was only limited to "reviewing records." Pl.'s Opening Br.

9-10 (ECF No. 17.)  The Ninth Circuit has consistently held that "the opinion of an examining

---

[3] During the November 15, 2018 ALJ hearing, Dr. Strahl was asked questions about Exhibit 13-F, which is Dr. Causeya's Psycho-Diagnostic Evaluation with Assessment of Ability to Work dated January 27, 2012. *See* Tr. 529-41, 1199-1205.  The ALJ asked Dr. Strahl to review and comment on Dr. Causeya's assessment and overall Dr. Strahl testified that, "although that is dated for 13-F, nor does 13-F say anything different than I'm saying, and I should reflect say that differently.  I am indicating that [Plaintiff's] current situation is very consistent with 13-F." Tr. 1201.

physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759

F.3d at 1012 (citing *Ryan v. Comm'r of Soc. Sec.*, 157 F.3d 1194, 1198 (9th Cir. 2008)).  Here,

the ALJ failed to provide legally sufficient reasons supported by the record for why Dr. Strahl's

medical opinion as a non-treating, non-examining physician should be given more weight than

Dr. Causeya's, especially given her role as one of Plaintiff's examining physicians.  Therefore,

the fact that Dr. Causeya only performed a one-time evaluation of Plaintiff was not a specific and

legitimate reason to discredit her medical opinion and give more weight to Dr. Strahl's.

The ALJ failed to provide specific and legitimate reasons for discrediting the medical

opinion of Dr. Karla Causeya.  Many of the reasons were previously rejected by this Court, and

the two new reasons presented were not specific and legitimate reasons supported by the record.

### B.      Dr. Susan Marie[4]

Dr. Susan Marie is one of Plaintiff's treating mental health providers.  On November 7,

2018, she completed a Mental Residual Functional Capacity Assessment. Tr. 1382-84.  In the

assessment she noted that Plaintiff was diagnosed with schizophrenia, bipolar disorder I,

hypertension, traumatic brain injury, and mild neurocognitive disorder. Tr. 1382.  She

determined that Plaintiff would be markedly limited in the following: understanding,

remembering, and carrying out detailed instructions; interacting appropriately with the general

public or customers; responding to requests, suggestions, criticism, correction, and challenges

from supervisors; working cooperatively and handling conflicts with coworkers; working at an

appropriate and consistent pace and completing tasks in a timely manner; being able to ignore or

avoid distractions while working, and working with others without interrupting; sustaining an

---

[4] The ALJ incorrectly refers to Dr. Susan Marie as Dr. Susan Mrie in his March 11, 2019
decision. *See* Tr. 1173.  The misspelling does not change this Court's analysis.

ordinary routine and regular attendance at work; and working a full day and completing a full week without needing more than the allotted number or length of rest periods during the day. Tr. 1382-83.  She also wrote that Plaintiff would be moderately limited in remembering locations and work-like procedures, using reason and judgment to make work-related decisions, and in his ability to ask simple questions or request assistance from supervisors or coworkers. *Id*.  Dr. Marie also found Plaintiff would be extremely limited in his ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, suspiciousness, or other inappropriate behavior. Tr. 1383.  Specifically, she wrote that Plaintiff was "[v]ery fearful," "avoids people," and is afraid to disclose hearing voices for "fear of being involuntarily hospitalized." *Id*.

Overall, Dr. Marie wrote it would be "difficult to determine" how frequent and how long Plaintiff would need extra breaks as his "psychosis [and] mood changes affect functioning" and are "unpredictable." Tr. 1383.  She also wrote his concentration would be impaired 50% of a standard workweek, and that he would miss over two days of work per week. Tr. 1383-84.

The ALJ gave Dr. Marie's medical opinion "little weight" for the following reasons: (1) the ALJ gave greater weight to the opinion of Dr. Strahl because he "has greater education, training and experience" than Dr. Marie and "has reviewed the most complete and up-to-date medical evidence record,"; (2) the ALJ determined Dr. Marie's opinion was inconsistent with Plaintiff's testimony that he could work "as a part-time Street Roots vendor and recent treatment notes showing less paranoia," and that he was "having an easier time being around people and improving psychosis, albeit [with] continuing mood instability."; and (3) the ALJ found her opinion "does not square with treatment notes throughout showing improvements in symptomatology overall with sobriety and medication compliance." Tr. 1173.

The Court rejects the ALJ's first reason for discrediting Dr. Marie noting that as discussed above, the ALJ had no evidence on which to base his finding that Dr. Strahl "has greater education, training and experience" than Dr. Marie as neither Dr. Strahl's, nor Dr. Marie's resumes are not part of the record. Therefore, the ALJ's finding is not supported. Additionally, although the ALJ correctly notes that Dr. Strahl had the opportunity to review the most up-to-date medical opinions, as noted above, Dr. Strahl failed to review all of the treatment notes, including more recent treatment notes from Dr. Marie in exhibit 34-F where she noted in August 2018 that Plaintiff continues to experience fear around people and persistent mood swings. *See* Tr. 1407-12. Therefore, these are not specific and legitimate reasons to discredit Dr. Marie.

Next, the ALJ found Dr. Marie's medical opinion was inconsistent with Plaintiff's activities of daily living, which included selling Street Roots, and recent treatment notes showing Plaintiff was having "less paranoia," "having an easier time being around people, and improving psychosis, albeit continuing mood instability." Tr. 1173. Inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that provider's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). However, the record does not support the ALJ's findings that Plaintiff's activities are inconsistent with Dr. Marie's findings. First, Plaintiff testified that he only sells Street Roots for about three hours a week. Tr. 1210. Plaintiff's ability to work three hours a week is not inconsistent with Dr. Marie's findings. Additionally, Dr. Marie was aware of Plaintiff's activity selling Street Roots as she noted in her November 7, 2018 Mental Residual Functional Capacity Assessment that Plaintiff is only "[a]ble to sell Street Roots for 1 hour" and "quits" because he is "[u]nable to concentrate" and "[f]orgets customers." Tr. 1383. Her knowledge of these activities

implies that Dr. Marie reached her medical opinion with these activities in mind. Therefore, these alleged inconsistencies are not supported by the record and are not a specific and legitimate reason to discredit Dr. Marie's medical opinion.

Additionally, the Court finds that the ALJ's statement that Dr. Marie's treatment notes are inconsistent with recent notes showing "less paranoia" and that Plaintiff was having an "easier time being around people" are not supported by the record. As noted above, Plaintiff's bipolar disorder is episodic in nature, with Plaintiff experiencing good days and bad days. Although the ALJ points out that Dr. Marie's August 10, 2018 chart shows Plaintiff had an easier time being around people, the same chart note also notes that Plaintiff continues to describe experiencing mood swings "a lot" and that he continues to have "continuing mood instability." Tr. 1410. Additionally, the longitudinal medical record shows Plaintiff continues to experience episodic good and bad days, thus the ALJ's conclusion that Plaintiff showed improvement is not supported by the record. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (An ALJ must consider all evidence of record, not merely evidence of improvement, to support a finding that Plaintiff is not disabled.) The ALJ's finding that Dr. Marie's findings are inconsistent with the record are not supported and are not a specific and legitimate reason to discredit her medical opinion.

Finally, the ALJ discredited Dr. Marie's opinion finding that it "does not square with treatment notes throughout showing improvements in symptomatology overall with sobriety and medication compliance." Tr. 1173. Again, as noted above in Dr. Causeya's medical opinion, and as previously found by this Court, even while maintaining sobriety Plaintiff experiences difficulty interacting with others. *See* Tr. 1276-77. The ALJ's finding is not supported by the record and is therefore not a specific and legitimate reason to discredit Dr. Marie.

Overall, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to discredit Dr. Marie's medical opinion.

### C.    DDS Reviewing Psychologists

Finally, Plaintiff argues that the ALJ failed to properly follow the Court's December 2017 remand order with regards to including all the restrictions identified by the DDS reviewing psychologists. Pl.'s Opening Br. 16-17 (ECF No. 17).

On December 2017, Judge You recommended the case be remanded for further proceedings after finding the ALJ failed to provide specific and legitimate reasons for discrediting Dr. Causeya's medical opinion, and failed to include all of the restrictions noted in the DDS reviewing psychologists' assessments in Plaintiff's RFC and hypothetical questions propounded to the vocational experts in 2012 and 2015. Tr. 1263-82. On February 1, 2018, Judge Simon adopted Judge You's Findings and Recommendation, and on March 9, 2018, Judge Simon clarified that the case should be remanded for further proceedings. Tr. 1261-62, 1289-92.

Plaintiff argues that ALJ failed to properly follow this Court's remand order by failing to fully incorporate the limitations identified by the DDS reviewing psychologists. Pl.'s Opening Br. 16-17 (ECF No. 17). Specifically, Plaintiff argues that the ALJ failed to account for the following limitations that were identified by the DDS reviewing psychologists: (1) that Plaintiff is "intermittently capable of understanding, remembering, and carrying out simple and repetitive tasks," and (2) that Plaintiff is "moderately limited" in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances." Pl.'s Opening Br. 18 (ECF No. 17). The Commissioner argues that the ALJ's finding "accounted for [the DDS examining psychologists'] report that Plaintiff could understand, remember, and carry out simple

and repetitive tasks for all but the most extended periods of time" and therefore this Court should affirm. Def.'s Br. 5 (ECF No. 18).  The Court finds Plaintiff's argument persuasive.

As an initial matter, although never addressed by either party, the Court notes that here, the ALJ only evaluated the DDS reviewing psychologists' opinions from August 31, 2010 and October 5, 2010, but failed to consider the opinions of the DDS reviewing psychologists from March 25, 2014 and September 16, 2014 which were the DDS examining psychologists' opinions at issue and addressed by this Court in December 2017. *Cf.* Tr. 1176 where the ALJ gives "weight" to the State Agency consultants after examining Exhibits 1A and 3A but fails to review the DDS reviewing psychologists' opinions from Exhibits 7A and 9A; *see also* Tr. 1277-80 this Court's December 2017 Finding and Recommendation where the DDS psychologists' opinions from March 25, 2014, and September 16, 2014 were at issue.  As the ALJ failed to review the DDS psychologists' opinions from 2014, it is clear to the Court that the ALJ failed to properly account for the more restrictive limitations they noted regarding Plaintiff's intermittent ability to understand, remember, and carry out simple and repetitive tasks, and Plaintiff's moderate limitations in maintaining regular attendance, performing activities within a schedule, and being punctual within customary tolerances as these limitations were only addressed in the March 25, 2014 and September 16, 2014 DDS psychologists' opinions. *Cf.* Tr. 83-85, 96-98; *see also* Tr. 669-72, 687-90.

Additionally, even assuming the ALJ reviewed the more restrictive 2014 DDS psychologists' opinions that were at issue, the RFC still fails to account for Plaintiff's intermittent ability to understand, remember and carry out simple and repetitive tasks, and Plaintiff's moderate limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances.  The failure to account for these

limitations is reversible error. *See Dennis v. Colvin*, 2015 WL 3867506, at *6-7 (ALJ committed reversible erred by failing to incorporate Plaintiff's limitations in attendance in the RFC). Since the ALJ failed to properly consider the DDS psychologists' opinions that were at issue, the Court finds the ALJ failed to properly follow the remand order.

## CONCLUSION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 2003)). The reviewing court should decline to credit

testimony when "outstanding issues" remain.  *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the first prong of the credit-as-true analysis is met because the ALJ failed to provide legally sufficient reasons for: (1) discrediting Dr. Causeya's medical opinion; (2) discrediting Dr. Marie's medical opinion; and (3) failing to follow this Court's remand order regarding inclusion of the DDS reviewing psychologists' opinions in the RFC.

As to the second prong, there are no outstanding issues that must be resolved, and the record has been fully developed.  Although Plaintiff's substance abuse has been noted in previous opinions, this Court finds that the opinions of Dr. Karla Causeya and Daniel Meier, MA, QMHP, along with new testimony from medical expert, Dr. Strahl, show Plaintiff experiences debilitating mental impairments even absent substance abuse.  *See* Tr. 538, a January 27, 2012 medical opinion from Dr. Causeya noting that Plaintiff "continues to have an unstable mood, and does not get along well with others" even with only occasional alcohol use; Tr. 907, a December 1, 2015 medical report from Daniel Meier, MA, QMHP, noting that "[e]ven with a reduction in substance use, [Plaintiff] still experiences incidents of diminished impulse control and insufficient development of appropriate coping skills to fully deal with frustrating situations and persons; Tr. 1198, Dr. Strahl's testimony from the November 15, 2018 ALJ hearing where he testified that Plaintiff would have "marked" difficulties with impulse control, and that these difficulties would exist "whether he uses [alcohol or substances] or not."

Finally, the third prong is met because it is clear from the record that if the ALJ fully credited Dr. Causeya's medical opinion, Dr. Marie's medical opinion, and the DDS reviewing psychologists, the Commissioner would be required to find Plaintiff disabled.  On November 15, 2018, the VE testified that if a person is off task for more than 20 percent of the workday there

would be no work available. Tr. 1220.  Crediting Dr. Causeya's medical opinion that Plaintiff

has moderately severe limitations in maintaining concentration for at least two straight hours,

completing a normal workday and work week without interruptions from psychologically based

symptoms, and performing at a constant pace without an unreasonable number and length of

rests would prevent him from maintaining competitive employment. *See* Tr. 540.  Additionally,

crediting Dr. Marie's opinion that Plaintiff's attention and concentration would be impaired 50

percent of the workweek and that he is able to concentrate for an hour of work before quitting,

along with the DDS reviewing psychologists' opinions that Plaintiff would only have an

intermittent ability to understand, remember, and carry out simple and repetitive tasks further

supports a finding that Plaintiff would be unable to maintain competitive employment. *See* Tr.

670, 688, 1383.

     For the reasons set forth, the Commissioner's decision is reversed and this matter is

remanded for the immediate calculation and payment of benefits.

     DATED this <u>21st</u> day of July 2020.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI
United States Magistrate Judge